UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

LESLIE JOHNSON,　　　　　）
　　　　Plaintiff,　　　　　）　　　Cause No. CIV. 17-4043
　　　　　　　　　　　　　　）　PLAINTIFF'S OBJECTION TO DEFENDANT'S
vs.　　　　　　　　　　　　）　MOTION FOR SUMMARY JUDGEMENT
　　　　　　　　　　　　　　）　　　　　　AND
DENNY KAEMINGK, Secretary of ）　SWORN AFFIDAVIT'S BY DEFENDANT'S
Corrections, in his public cap.;）
ROBERT DOOLEY, Chief Warden, in ）
public cap.; NANCY CHRISTENSEN, ）
Unit Manager, in her public　　）
cap.; ALEJANDRO RAYES, Ass.　　）
Warden, in his public cap.　　　）
ROB CARUHAHA, ADA Coordinator, ）
in his public cap.　　　　　　　）
　　　　　　　Defendants　　　　）

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

COMES NOW, Leslie Johnson, Hereinafter known as Plaintiff moves in This Honorable court His, Objection to Defendant's motion For Summary Judgement, And Sworn Affidavit's By Defendant's Plaintiff asks The clerk of court File Plaintiff's Objection And Present's it to The Honorable Judge Piersol For A Ruling And Asks For Trial By Jury, That Defendant's motion For Summary Judgement Be Dismissed. That The Honorable court Rule in Favor of Plaintiff's motion For Independant Licensed Architect investigate Defendant's claims of Compliance, And other issues named in motion.

DATED This 7th DAY of October, 2017

　　　　　　　　By _____
　　　　　　　　Plaintiff
　　　　　　　　Leslie Johnson
　　　　　　　　110 E. Martha St.
　　　　　　　　Tea, South Dakota, 57064

Opening statement for:


Assistant Attorney General Frank Geaghan

Brent Fluke

Alejandro Reyes

Nancy Christensen

Rob Caruaha

Misty Hanvey

Melvin Wallinga


For the record and as matters of fact!


My name is Leslie J. Johnson. I am a male, 68 years of age. Despite the claims in their sworn affidavits of Melvin Wallinga and Misty Hanvey I have a huge amount of serious medical conditions. They both swore under oath that I only suffer from C.O.P.D., leg weakness and impaired balance. These things would more than meet the definition of disabled for the Americans with Disabilities Act of 1990, not of the definition of Mr. Frank Geaghan references. Luckily the documents Mr. Johnson has provided the courts more than disprove all of these claims. Mr. Johnson has many more medical conditions than a doctor or nurse employed in the medical field were willing to admit or even list. Some of Mr. Johnson's medical conditions are in fact death sentences for him. Here is another shocker, Mr. Johnson suffers from a medical condition that the daily weather greatly effects. This medical condition is rheumatoid arthritis, combined with Mr. Johnson's other diseases and medical conditions. Here is another shocker, Mr. Johnson has some good days where he can maneuver pretty good but also has some days where he can barely get out of bed. A lay person would ask any of you who wrote sworn affidavits if you can relate to having good days and bad days? (Be honest)

Why is Mr. Geaghan so careful to never mention that Mr. Johnson has had multiple heart attacks and has a very serious heart condition, he has a pacemaker/defibrillator and has had a stroke. Yet all he wants the court to know is Mr. Johnson can get out of his wheelchair and onto an exam table unassisted, Mr. Johnson can walk across a 10ft by 10ft room. Mr. Geaghan would have really disputed my last wife's disability, she was only in a wheelchair due to poliomyelitis, yet she drove, worked five days a week and as amazing as it may sound she could scoot using her arms up and down bleachers and stairs so she would have never met Mr. Geaghan's definition of handicapped. It seems Mr. Geaghan only recognizes handicapped as someone who cannot move, an invalid. Not at all the definition of the A.D.A. Please see the many A.D.A definitions I have provided the court. All of Mr. Geaghan's statements are from people who depend on the D.O.C for their paychecks, their financial and their retirements. In other words their livelihoods depend on pleasing the D.O.C and none of them have testified under oath yet! U.M. Nancy Christensen has told me more than once she can't retire yet as, Gary, her husband needs the state medical coverage for his issues. Is her testimony swayed? How many other's testimony is swayed by their depending on the D.O.C? Why is it every time Mr. Johnson is in the hospital he is classified as a fall hazard and must have two people to get out of his hospital bed? No testimony of this either, why?

Obtaining money under fraudulent applications, pretense #4 of the original complaint starts this claim. The settlement agreement only confirms that the state of South Dakota was not compliant with all the federal laws prior to taking the federal money. It is the court's responsibility to the federal government to order the state of South Dakota to repay any money received since 3/15/11 since it has been obtained under fraudulent applications, as they are asked if they are in compliance with federal law prior to taking federal money. Then see the violations of the Attorney Genera'ls office just based off the failures of compliance and enforcement of 42u.s.c.s ss1997b. In attachment A the court needs to look at numbers 1-22 and 27-45. Mr. Geaghan forgets that Mr. Johnson's claim to the A.D.A was filed while he was housed at S.D.S.P, that is why the A.D.A investigated there as well. Mr. Geaghan seems to believe that if he clears things with Mr. Johnson then all is forgiven but until correcting your wrong doing clears everybody the court cannot find the violations of discrimination, retaliation, coercion, harassment and the 8th and 14th amendment violations did not happen. As a convicted man I ask, why was it that my accepting responsibility for my crime was of high priority but for the state responsibility is not ever mentioned. The plaintiff wants a jury trial on all issues and a court date set for trial.

Mr. Geaghan keeps arguing that Mr. Johnson doesn't meet the A.D.A requirements for disabled however, the letter dated February 7, 2014 from the D.O.J states that claim DJ 204-69-56 belongs to Leslie Johnson and its investigators are Ms. Ame Eduardo and Mr. Delante Wade. See Exhibit

Then the plaintiff argues if in fact the state of South Dakota and its Dept. of Corrections were compliant how is it that James Murphy won his lawsuit and complaint? How is it Mr. Johnson's complaint was accepted, investigated and caused a settlement agreement? More importantly if the state and D.O.C were fully compliant why does Mr. Geaghan keep saying things like, "that is no longer in use" or "we moved those programs to the library", also "the stair lift has been removed" and many more such comments in defense of the A.D.A violations.

Mr. Geaghan, the federal law does not say that Leslie Johnson has to be handicapped but the law does say that the South Dakota Dept. of Corrections has to be A.D.A compliant and per page 2 of the settle the S.D.D.O.C is and was not compliant. The signing of that settle proves that the S.D.D.O.C obtained federal aide under false pretenses. They also violated Mr. Johnson's U.S. constitutional rights by being non compliant with the A.D.A and discriminating against Mr. Johnson simply by being non compliant. I ask the court read page 2 of settlement, also see exhibit. ( A.D.A P9j )

Mr. Geaghan complains about Mr. Johnson filing grievances, the fact is grievances are

not required to file or for an A.D.A complaint to be filed. Mr. Johnson's complaint was filed, accepted, and investigated which shows the S.D.D.O.C was in violation of Programmatic Barriers to access for persons with disabilities and are subjected to discrimination. This was agreed to and signed by the S.D.D.O.C on October 17, 2018. These are facts and so it is a fact that the settlement agreement bears Mr. Johnson's complaint number.

Mr. Geaghan says Mr. Johnson had the use of a stair lift to get to church service, that same chair lift is the tool that the S.D.D.O.C used to make Mr. Johnson a "class of one" and subjected to discrimination on violation of the equal protection clause of the fourteenth amendment and this was repeated when U.C. Eilers and the S.D.D.O.C told Mr. Johnson he could not use the handicap toilet, sink and mirror in the handicap bathroom. They again singled Mr. Johnson out as a "class of one". As is Murphy v Kaemingk file number 13-4134 pg. 3 (6), pg.4 (7 and 8), pg. 9d. These opportunities were denied Mr. Johnson and as stated grievances were provided as proof and are not required in any A.D.A complaint or lawsuit. Pg. 11 g.

The section in the settlement that states the D.O.C must be compliant on all areas of the A.D.A they are not to pick and choose which areas to follow, the federal law says that any public entity must be compliant. The law also says any one receiving federal funds must be in full compliance. No where is it written if Leslie Johnsonis able to stand, walk 10ft or get out of his wheelchair and onto an exam table unassisted he does not meet the A.D.A definition of handicapped. Exhibit 18 clearly shows Mr. Johnson standing at the officers desk with both hands on top of the kite boxes for support and stability. A lay person can see by the photo the desk is well over 34 inches high which is a clear violation of the 2010 standards (see grievance). A larger question is why does he not have proof of the stair lift with Mr. Johnson sitting in it as others go by and up and down the stairs to church service as Mr. Johnson is a class of one and forced to wait. Also this does not show that not all the time was Mr. Johnson in the stair lift, in fact only once, the other times he was outdoors in his wheelchair. Mr. Geaghan is very cautious in what video photos he will allow but he is also very quick to seal discovery that would harm his case, like Mr. Johnson's medical files. Well he can't seal the medical reports Mr. Johnson has such as cancer records, heart records, diagnosis of dilated cardiomyopathy, a death sentence, and C.O.P.D another death sentence and the glaucoma. Any one of these is enough to meet the A.D.A definition Mr. Geaghan argues for a person to be disabled. See Exhibit. ‑ ( MEDICAL )

For the record Mr. Geaghan claims Mr. Johnson does not and cannot prove he meets the definition for the A.D.A of handicap because Mr. Johnson can stand, Mr. Johnson can walk across a 10ft by 10ft room, Mr. Johnson can get out of his wheelchair and onto an exam table unassisted. For the years Mr. Johnson was housed at S.D.S.P he climbed 3 stairs in order to get into the handicap shower also Mr. Johnson had to lower his wheelchair down 3 stairs in order to get to the area for children in the visit room area or he would not have been able to visit his granddaughters at S.D.S.P. So based on Mr. Geaghan's definition of handicap the millions of people who get up every morning, struggle to shower unassisted, get dressed unassisted, make breakfast unassisted, go out and get in their very costly modified van, car, truck and then drive to work and work all day unassisted must not meet the definition of handicapped per the A.D.A either. So I ask Mr. Geaghan why does the state of South Dakota have handicapped parking and by all means why would there be any need to sell a handicap license plate?

Exhibit 16

1. Background

Jurisdiction

Pg. 2, sect. D of settlement agreement pg. 7 of defendants motion that he is a qualified individual with a disability. Mr. Geaghan is very careful not to mention Mr. Johnson's heart condition, Mr. Johnson has had 4 heart attacks, Mr. Johnson suffers from severe dilated cardiomyopathy, heart failure, left bundle branch block. Mr Geaghan made certain no affidavit from the heart hospital or the people from Boston Scientific follow up every 6 months. He was very careful not to mention that every Tuesday since January 2013 when the medical department for the South Dakota Dept. of Corrections finally started doing the weekly downloads on the latitude machine for Mr. Johnson's cardiac implant. See sealed exhibits 1:15.

Provided pages 1-12 disability grievance procedure 35.107b not done, see attached grievances in argument of complaint. Pg. 10 posting policies and procedures within 14 days not done.

Pg. 11 reporting requirements court subpoena proof of such from supervisory trial attorney Mellie H. Nelson.

Pg. 12 The court have a U.S. Marshall interview the 2 deaf inmates Robert Goulding and Jessy Johnson also Charles Godsmith another inmate in a wheelchair. Implementation and enforcement and get confirmation from Mellie H. Nelson on D, E, F, G, I and J. The S.D.D.O.C must continue to comply with all aspects of the A.D.A, such as the officers desk, inmates desk, proper signage and enforcement of designated handicap desks in rooms. A.D.A compliance is the law, it does not stop because Mr. Johnson is out on parole.

1. As to exhibit 17 I ask the court to refer to the 504 design guide pg. 5.

2. Exhibit 19 shows Mr. Johnson standing at the kite boxes in front of the officers desk, a clear obstruction to clean floor and ground space for access to the over height desk.

3. Exhibit 20 proves the lies told by D.O.C as to who said Mr. Johnson couldn't do 3 stairs. Mr. Johnson had to lower his wheelchair down 3 stairs at every visit to get to the children's area in order to have his visit while housed at S.D.S.P.

4. Affidavit of Alejandro Reyes, Mr. Reyes, fails to list his title as A.D.A coordinator as an employee of the South Dakota Dept. of Corrections. His first obligation is to his paycheck and the provider of said paycheck. His affidavit is extremely bias and swayed by his finances. His statement of correction in no way gives approval to the facts found by the U.S.D.O.Jon the violations Mr. Johnson suffered because of these blatant A.D.A violations and discrimination. As for the stair lift the defendants are not so quick to mention the stair lift violation because it required the user to exit their mobility device and it left said device behind leaving the user without their device a fact well hidden by the defendants. Mr. Reyes also cites Mr. Johnson was released 10 minutes early. Should this have happened? How did it come that the need for the officer had to force Mr.

Johnson to stop and not proceed with the church service because the officer had to count the inmates entering the building. Mr. Reyes cites a letter from secretary Kaemingk stating Mr. Johnson was assisted, he does not mention the sworn affidavit by Mr. Scott Wales where he states he was an usher and couldn't wait for Mr. Johnson so he took Mr. Johnson's wheelchair to the top of the stairs. It is very plain even to a lay person Mr. Reyes is not very well versed in the rules and regulations of the Americans with disabilities act of 1990. Also, why do the defendants not provide video footage of these claims of the alternative routes but they made sure to show footage of Mr. Johnson standing. They also argued very strongly to Mr. Johnson's motion for video preservation of video footage of these very claims. That motion was denied, I think a jury would ask why.

#37- Those measurements were taken after Johnson had moved to a bigger desk in the room because the inmate that had that area had moved out. As for the rest of Mr. Reyes affidavit he never mentions for example the measurements of other desks and phone cords.

#49- Mr. Johnson is trying to get to the desk to speak to an officer, notice Johnson's hands on top of the kite boxes for balance as stated in Dr. Wallinga's affidavit. Johnson keeps reaching for things for support and balance. In one of our meetings Mr. Reyes stated the kite boxes would be moved to make the officer's desk more accessible and lower the desk to bring it into compliance. Also the counter at property and in the library were each addressed but not the officers desk in Harmon Hall.

#57- See attached. Provided in motion against defendants complaint, no change in elevation in a turning space, getting onto the mat is only one act then the wheelchair occupant has to turn the wheelchair off of the mat to get away from the ice machine in a turning space. The affidavits from every person Mr. Geaghan provided are either directly or indirectly obligated to the South Dakota Dept. of Corrections for a paycheck, pension or financial survival. Also notice that each ones main goal is to make Mr. Johnson out to be a phony and a liar. Notice that Mr. Geaghan was very careful not to get an affidavit from Dr. Moeller who removed the cancer from my tongue and now heads up my follow up preventive program and dr. visits. Mr. Geaghan was very careful not to get an affidavit from any of the opthamologists that treat Mr. Johnson's glaucoma. Mr. Geaghan was also very careful not to get an affidavit from any of the nurses that cared for Mr. Johnson from November 3 to November 6, 2018 for pneumonia and listed Mr. Johnson as a fall hazard and required 2 nurses any time Mr. Johnson needed to get out of bed. Mr Geaghan was very careful not to get an affidavit from any of the nurses at the heart hospital of South Dakota in Sioux Falls who see Mr. Johnson every 6 months for the follow-up and download of his cardiac implant. Mr. Geaghan was also very careful and very sure to not get an affidavit from Mr. Johnson's heart surgeon and also made certain to not even mention that Mr. Johnson has a heart surgeon or a heart condition. Mr Geaghan also made sure not to mention that during Mr. Johnson's entire incarceration he was never seen by pulmonologist for his C.O.P.D nor was he ever seen by pulmonology. He also never mentions Mr. Johnson has a lengthy list of inhalers and a nebulizer he uses in order to breathe.

Affidavit of Dr. Melvin Wallinga

#5. Johnson has been diagnosed with among other things C.O.P.D, leg weakness and impaired balance.

#6. Johnson's condition has not changed much from a few years ago, so receiving a cardiac implant is not that much of a change? It is quite a bit of a change for my heart surgeon. He also states Mr. Johnson is not entirely confined to a wheelchair, this is in no way a requirement of the A.D.A 28c.f.r part 35 ss 35.104. Mr. Johnson meets multiple conditions listed none of which read confined to a wheelchair, contrary to Mr. Geaghans belief.

#10. Dr. Fausch was a one time fill in for Dr. Olson who sees Mr. Johnson every 6 months since 2012 when the implant was installed.

#14. This is a total lie.

#16. I simply ask anyone with C.O.P.D, heart implant and advanced age if they ever have good and bad days. The weather greatly affects my rheumatoid arthritis in my feet and the arthritis in my knees, hips, shoulders, hands and back so some days I really do need help out of my wheelchair even if it is just the armrests.

#17. Mr. Johnson complained of his right leg cramp because his right leg is how he propels his wheelchair which he does while sitting in the wheelchair.

#19. Mr. Johnson asked about orders and or report of therapist was because on the Thursday the therapist said we are not gaining on you. There are too many things against you and you have no balance so I will prepare a list of exercises you can do in your room at your desk for support as needed.

#20. See grievance # 17437. U.C. Eillers stated Mr. Johnson had a med paper stating he was issued New Balance shoes and he is to walk more. Attachment B.

#23. Mr. Johnson is to use a wheelchair for any distance at M.D.S.P due to chronic leg weakness and impaired balance.

#25. The New Balance shoes were issued once a year and Mr. Johnson propels his wheelchair with his feet which is where Mr. Johnson wears the New Balance shoes, on his feet.

#26. No definition of limited activity, Mr. Geaghan need definition.

#27. Mr. Johnson stated I want what is diagnosed as needed not what anyone thinks I want or what they want. I want a doctors honest and professional opinion only. See Supreme Court brief #27049 and Susan Jacobs affidavit pages 37-38.

#28. I do not recall any of this ever taking place. I always get the name and make notes for all sick calls.

#29. Dealt with the handicap shower, not the weather.

#30. A pure lie.

#31. How many times has Johnson had pneumonia since 2013 and where was Johnson walking and what dates? This is one of the sealed exhibit items that the state of South Dakota wants kept from Mr. Johnson and a jury. There are lots of them. Exhibit 10 is referred to as a GXR to rule out pneumonia. The first page of exhibit 10 is semi true, there was no reason to mention Mr. Johnson walking as there is very little walking done during the taking of a shower. A follow up with Dr. Moeller on a PET scan so a lay person would ask why the comment and with walking other than to protect a paycheck and meet with the approval of the South Dakota Attorney General's office. A layman would also ask why was only a small portion of the inhalants Mr. Johnson is on was listed as to what he takes daily and nightly except to lessen the seriousness of Mr. Johnson's respiratory condition. What else is being hidden from Mr. Johnson and the jury? What is interesting on exhibit 10 is Dr. Wallinga's plan, it reads, did review of the PET scan today with Leslie, Dr. Moeller has scheduled a biopsy of this lesion along the right side of his tongue. He will need to be off of his ASA prior to his procedure. As noted by Dr. Moeller's orders I will obtain GXR to rule out pneumonia. Does have a history of scarring on his upper lobes. Start augmentin 875mgx10 days, continue with his current albuterol/Qvar use. Nursing to follow up on 11-5, may need continuation of his current mucinex if still having cough and congestion. Now the amazing fact about this exhibit 10 is dated 11-2-18 on 11-3-18 Mr. Johnson went by ambulance to Sacred Heart Hospital in

Yankton and was diagnosed with pneumonia and was not released until 11-6-18. This does not speak well to a lay person for the abilities of Dr. Wallinga or the medical department at M.D.S.P. See exhibit 11,12,13.

#32. Not even 24 hours since Dr. Wallinga and nurse Hanvey stated he did not have pneumonia Mr. Johnson is taken by ambulance to Sacred Heart hospital. See #33-35.

#38. Does appear quite unsteady and reaches for objects in order to stabilize himself. He was more than able to walk across the exam room, turn around and return without assistance. Again, a lay person would interpret reaches for objects in order to stabilize himself and obtaining assistance.

#39. Why did it take Mr. Johnson reaching his release date before health services would suggest a walker? Mr. Johnson and his daughter had discussed it about a year ago and at the July 11, 2019 visit Mr. Johnson asked Dr. Wallinga about a walker.

#42. The 2010 standards for urinals under 28cfr part 35 ss213.3.3 and ss 605-605.4 being compliant by the D.O.C has absolutely no regulation based on Mr. Johnson's ability to stand, transfer in or out of his wheelchair, use a telephone or any other such functions by Mr. Johnson could or would affect the state of South Dakota, it's Dept. of Corrections would be considered in 100% compliance by the parties named in Mr. Johnson's complaint on the settlement agreement. They must be fully compliant with the 504 design guide, title II, III,V and all 2010 standards including, but not limited to all A.D.A rules, regulations and laws under 42U.S.C ss 12131-12134,504 rehabilitation act of 1973 as amended. Section 504 and related implementing regulations which in fact make Mr. Johnson a qualified individual under the A.D.A.

#45. This was because of the increased heat and humidity of summer and the advancement of Mr. Johnson's many chronic care conditions. ( See medical exhibits)( C).

#47-51. Mr. Johnson suffers from congestive heart failure, heart failure, sever dilated cardiomyopathy (a death sentence), a cardiac implant, left bundle branch block and C.O.P.D (also a death sentence).

#52. Not only has health services never issued a medical order to help Mr. Johnson with breathing in areas. He has complained they have never issued an order for Mr. Johnson to be seen by any type of lung expert or pulmonary diagnosis by any type of a lung expert. Another issue a lay person would ask, why not?


Since 2007 Dr. Wallinga has been the medical director for the S.D.D.O.C at M.D.S.P, a high paying position and one he would sure want to protect for the financial benefits and comforts.

#5. Dr. Wallinga for some reason is very careful in what chronic care conditions he mentions. These are the items he mentions C.O.P.D, leg weakness and impaired balance but he does not mention that Mr. Johnson suffers from glaucoma, cardiovascular disease, severe dilated cardiomyopathy which can only be treated by a heart transplant (a death sentence), heart failure, left bundle branch block and an implantable cardioverter defibrillator system along with a pacemaker. This heart information left out by Dr. Wallinga and the Attorney General's Office. Also left out by the good doctor is the fact Mr. Johnson has had a stroke, he suffers from glaucoma, he has had cancer removed twice, he has suffered multiple heart attacks, he suffers from rheumatoid arthritis in his feet, knees, ankles, hips, hands, shoulders and back. He also suffers with ulcers of the esophagus. These are some of the other things a medical director and doctor sworn to the hypocritical oath of every doctor and what every lay person believes he will receive the best care, treatment and truthfulness from the doctor he or she is placing their life in the hands of. Mr. Johnson's faith and trust has been shattered as should any patient being seen by Dr. Wallinga in or out of prison should be as well.

#6. Dr. Wallinga states "it appears his condition has not changed much from a few years ago". In previous affidavits by wardens of M.D.S.P it is sworn that Mr. Johnson was returned to M.D.S.P on or about July 18, 2013. That being a fact, Dr. Wallinga, the medical director at M.D.S.P states under oath that Mr. Johnson's condition has not changed that much from a few years ago. The records from the heart hospital of South

Dakota clearly show that on November 14, 2012 Mr. Johnson underwent heart surgery for the CVS invasive procedure to implant a cardioverter defibrillator system and a pacemaker. Hardly any change to Mr. Johnson's condition at all, nothing any doctor would make note of!

Medical facts!

Mr. Johnson is a 68 year old male with a very extensive chronic care history that the Attorney General's office, the employees (direct or indirect) of the state of South Dakota or its Dept. of Corrections have lied, hidden, covered up or worse to keep the court from knowing and each of the defendants need to be placed under oath on a witness stand in front of a jury.

Rob Caruana

#3. In your capacity as physical plant manager for the D.O.C at M.D.S.P you should have known that any stair lift in a public entity which requires the user to get out of and abandon their mobility device be it cane, walker, wheelchair or other and get onto a stair lift and leave leaves the device behind is in no way compliant with the A.D.A. It denies the individual of their necessary device at the top or bottom.

#4. Ramp is non-compliant and leaves the handicapped individual faced with stairs and no stair lift.

#6-10. Came to be at least two years after the complaint was made. See settlement date.

#11-16. Footage of videos is needed as proof and all to be shown at trial, or is video only used to argue against Mr. Johnson? Without video Mr. Johnson's claims must be taken as true and fact.

#17-21. See attachment L, pages 17 and 18.

#22. This in no way un-robs the bank, the violations occurred.

#23-25. It does not exhaust outside it is on an indoor wall in an enclosed room with no windows or access to the outside in anyway.

#26. See exhibit O of original complaint, this violated executive order 12866.

#27. Johnson has never said she came to my room, I have always maintained she called me to the desk. This under oath is a lie and the court needs to file a charge of lying under oath.

#28. There is a witness to this I will name in a subpoena, he would be fired now.

#29. More lies under oath.

#30-31. More lies under oath.

Nancy

#4. There is no mention of the regulation which reads an accessible route for disabled and wheelchairs must be provided. Christensen does not deny no route was provided.

#5 and 6. This violation was reported and 28c.f.r part 35 section 35.107b reads all violations and complaints made will be investigated to an equitable resolution, rejected is in itself a violation and covered in pages 9 and 10 of the settlement.

#7. See attachment M,N,O, pg. 9Ss 204.4 and attachment L pages 17 and 18.

#8 and 9. See #7

#10. This does not un-offend or lessen the violations. Compliance is the law.

#11. See 4,5 and 6 response.

#12-15. All are non compliant. The settlement is very specific, the state of South Dakota and its D.O.C. will fulfill their obligation to be compliant with all rules, laws, and regulations of the A.D.A.

#19-25. Is addressed in Mr. Johnson's argument to defendant's response to plaintiff's complaint.

#26. Mr. Johnson said O.K. For some reason the state of South Dakota, its D.O.C and those who provided affidavits believe that Mr. Johnson has the authority to approve the violations of non-compliance for the A.D.A. A.W. Reyes who doubles as the A.D.A coordinator could represent the D.O.C much better if he were honest and more knowledgeable about compliance with the A.D.A the applicable regulations.

#27-32. See attachment filed in original complaint, grievance #17003.

#34. If true, why was Mr. Johnson never written up or otherwise disciplined?

#36. This stall is for general population and is not signed as handicap therefore it is not a compliant stall or bathroom.

#37. The sink is too high. Unit manager has made the decision to allow at least two totally ambulatory inmates to also use the handicap bathroom. See the response to grievance #17003 filed in original complaint it will be much different than this sworn and under oath response. The court should bring charges for lying under oath.

#38. See response to #37.

#39. See response in #37.

#40. In order to exhaust my administrative remedies I must file until I have exhausted my administrative remedies even though not needed in any A.D.A issues here.

#41-42. Please provide the court with a current and accurate copy of said shower list.

#43. There is a door on that bathroom so Mr. Johnson would know when it is in use perhaps not by a disabled or handicap.

#45-50. I will call witness at the time of trial and then prefer charges against unit manager Christensen for lying under oath and false accusation against Mr. Johnson while under oath by every person making a sworn affidavit.


Hanvey


Been a nurse since 2009 and has worked at M.D.S.P since she is the clinical supervisor.

#5. The clinical supervisor seems to only know about Mr. Johnson's C.O.P.D, leg weakness and impaired balance, just like the medical director Dr. Wallinga.


Just given this information a lay person would ask, how active, how far and how long can a person 68 years old with C.O.P.D (a serious respiratory condition), leg weakness and impaired balance (falls a lot), a person suffering from these conditions how active could they be before shortness or breath, leg fatigue, stumbling and falling would overtake him and he would need the use of a wheelchair? Now as a clinical supervisor and a nurse you don't say if you are an RN or an LPN, but given the true facts of the other things Mr. Johnson suffers from, his age, a stroke survivor with a very serious heart history and a

cardiac rhythm device, glaucoma, two time cancer survivor among other things, a lay person would ask how far can he walk or how long could he stand and most importantly how high would his risk of heart failure would he be if he stood, walked, exercised, was active, such as climbing stairs and other daily life activities. Let's ask his heart surgeon not Dr. Fausch.

#7. You state that the very few and very select conditions yourself and medical director Dr. Wallinga are willing to recognize, and list as to what Mr. Johnson suffers from. Health services at the M.D.S.P recommend the use of a wheelchair "for any distances traveled", given the true facts of all that Mr. Johnson suffers from, has undergone what would be your prescribed use of a wheelchair for a patient under your care with the same or similar conditions? A layperson after reading your affidavit and Dr. Wallinga's would ask why are they almost identical in describing Mr. Johnson given that you, yourself, has never done a sick call, been involved yourself in a chronic care evaluation of Mr. Johnson? You have only on very few occasions done Mr. Johnson's weekly downloads for Boston Scientific of his implant. You would have to take someone else's word for any medical information on Mr. Johnson or you could read other peoples reports. You as with all other defendants need to be under oath in front of a jury. A lay person would suspect that Dr. Wallinga was cautioned on the topics he should reference because he is very careful not to mention Mr. Johnson's very extensive heart issues and he very carefully avoided Mr. Johnson having cancer twice, most recently in March 2018. Dr. Wallinga is very careful and so is Hanvey to make no mention that Mr. Johnson was sent out for a CAT scan because we believe he had a stroke, to which the CAT scan confirmed. Also at the July 2019 chronic care Dr. Wallinga told Mr. Johnson with the use of a walker, proper diet and exercise I believe you can get most of the balance back that the stroke took away, but remember you're only going to get as far as your age and your other medical conditions will allow. This conversation is very carefully left out because it goes against what the Attorney General's office wants the court to know. The stroke was also discussed with unit managerChristensen once it was confirmed I had indeed had a stroke another medical condition we don't want to talk about out loud.

A layperson would ask Dr. Wallinga if you had a patient with the many medical issues Mr. Johnson has what would be your plan to best treat and care for him? As your oath would dictate. A layperson would also ask what medical information pertaining to Mr. Johnson's medical care by you has been sealed by the Attorney General's office to keep this from the court.

Why did you fill out the papers for Mr. Johnson to get a handicap permit from the division of motor vehicles if you don't believe and have sworn under oath that he does not meet the requirements of disabled?

Affidavits

Reyes, Fluke, Wallinga, Hanvey, Nancy and Caruana

Each one of these individuals are either indebted to the state of South Dakota or its Dept. of Corrections (DOC) either by employment direct or employment indirectly but either way financial gain is from the DOC and to swear an oath is understandable and evident in the very strong similarities in each ones sworn affidavit. Also in their similarities is a goal to make Mr. Johnson out to be a liar and to hide the truth about Mr. Johnson's true and factual medical conditions and severity of each condition. Then we have the fact that there is no mention of Mr. Johnson being seen by specialists for his severe medical conditions so well hidden. See medical exhibits.

We also have no sworn affidavits from Dr. Olson my heart surgeon and current attending cardiologist.

1. Dr. Miller found the squamous cell carcinoma.

2. Dr. Moeller removed the squamous cell carcinoma from the tongue.

3. Nothing from the ophthalmologists.

4. Nurse's at Sacred Heart Hospital that took care of Johnson November 3rd to November 6th 2018 for pneumonia and no wheelchair during stay or loading Mr. Johnson into wheelchair van of the D.O.C.

5. Any of the staff at Heart Hospital of South Dakota who seen Mr. Johnson every 6 months O\for his implant and downloads.

7. Dr. Olson's nurse practitioner who also sees Mr. Johnson regularly.

8. Dr. Moeller's nurse who visited Mr. Johnson in Nov. 2018 and seen him every 2 weeks, every 4 weeks, every 4-6 weeks and now every 2 months for cancer follow-ups. Any layperson would ask why no affidavits from unbiased doctors and nurses.

42U.S.C.S ss 1997b

Certification requirements; Attorney General to personally sign certification.

(a). At the time of the commencement of an action under section 3 (42uscs ss 1997 a), the Attorney General shall certify to the court-

1. That at least 49 calendar day previously the Attorney General has notified in writing the Governor or Chief Executive Officer and Attorney General or Chief Legal Officer of the appropriate state or political subdivision and the director of the institution.

(A). The alleged conditions which deprive rights, privileges or immunities secured or protected by the Constitution or laws of the United States and the alleged pattern of resistance to the full enjoyment of such rights, privileges or immunities.

(B). The supporting facts giving rise to the alleged conditions and the alleged pattern or practice including the date or time period during which the alleged conditions and patterns of practice or resistance occurred and when feasible, the identity of all persons reasonably suspected of being involved in causing the alleged conditions and pattern or practice at the time of the certification and the date on which the alleged condition and pattern or practice were first brought to the attention of the Attorney General.

©. The minimum measures which the Attorney General believes may remedy the alleged conditions and the alleged pattern or practice of resistance.

28CFR part 35 ss 35.104

28CFR part 35 ss 35.104

Definitions:

A. Any physiological disorder or condition cosmetic disfigurement or anatomical loss

affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, _respiratory_ (C.O.P.D), including speech organs. I lost 1/3 of my tongue at the hands of the D.O.C and its medical contractor. Cardiovascular , I have extensive cardiovascular including a cardiac implant all very carefully hidden in all of the states affidavits and explanations of why Mr. Johnson is not handicapped by the definition of the A.D.A. Then we go on in 28CFR part 35 under (A) to digestive (I have a history of ulcers on the esophagus). Then endocrine, I have kidney disease. In section A. I have 5 of the listed conditions that qualify me as handicapped. In section B. we have orthopedic, Mr. Geaghan made a huge deal about Mr. Johnson being issued New Balance shoes, I offer that as proof there must be some orthopedic issues for the state to spend that much on me. Then under B. we also have visual, I'm blind in my left eye without glasses and I also have glaucoma. Speech, I lost 1/3 of my tongue due to the cancer, Oh! Cancer is a qualifier also. Then we have heart disease again. Given these conditions I would believe the court would rule under the rules, guidelines, whatever Mr. Geaghan calls it Mr. Johnson meets the A.D.A's definition for handicap under number 3. The phrase has a record of such an impairment means has a history of or has been misclassified as having a mental or physical impairment that substantially limits one or more major life activities. Mr. Geaghan seems to believe because Mr. Johnson can get out of his wheelchair and onto an exam table and can walk across a 10ft by 10ft room that he has no conditions that could affect his major life activities. Well Mr. Geaghan the world is much larger than an exam room/table or a 10ft by 10ft room in prison. Given the total number of things Mr. Johnson qualifies as handicapped under the A.D.A's definition. I think the court would agree Mr. Johnson would find lots of major life activities he cannot perform because of his many qualifying impairments, the pace and the demands of the real world.

In closing, Mr. Johnson asks, what has changed since May 7th 2019? Mr. Geaghan closed his argument for dismissal with large bold letters in every word of his. Defendants demand a trial by jury on all issues. Well, the plaintiff demands defendants motion for summary judgement be denied and the Honorable Court set a date for a jury trial on all issues.

Dated this 7th day of October 2019